***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell. The appealing party has shown good grounds to reconsider the evidence; therefore, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. That all parties have been correctly designated.
3. At all relevant times an employment relationship existed between plaintiff and defendant-employer.
4. Plaintiff's average weekly wage was $370.00 with a compensation rate of $246.42.
5. Plaintiff is no longer employed by defendant-employer.
6. Plaintiff received short-term disability from a company-funded plan in the amount of $1,446.96.
7. The parties stipulated into evidence as Stipulated Exhibit #1, the Pre-Trial Agreement, and as amended.
8. The parties stipulated into evidence as stipulated Exhibit #2, an I.C. Form 22.
9. The parties stipulated into evidence as stipulated Exhibit #3, plaintiff's recorded statement of June 6, 2000.
10. The parties stipulated into evidence as Stipulated Exhibit #4, the printout of plaintiff's short-term disability benefits she received pursuant to defendant-employer funded plan.
11. The depositions of Dr. Robert A. Blake and Dr. Herman Clark Gore are a part of the evidentiary record in this matter.
 ***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing in this matter, plaintiff was thirty-five (35) years old. Plaintiff has a GED certification and her prior work history includes working for Krispy Kreme packing doughnuts and for TSS, Inc. as a temporary employee for Queens Group making boxes.
2. Plaintiff began working for defendant-employer as a distribution center material handler approximately 2.5 years prior to May 24, 2000, the date of her alleged injury by accident. Plaintiff's duties consisted of pulling orders of varying sizes and weights containing medical and hospital supplies. Plaintiff loaded these items by hand on a cart or on a lift and transported them sometimes by using a forklift. Plaintiff had no history of back or shoulder problems.
3. On May 24, 2000, plaintiff was employed as a material handler for defendant-employer. On this date, plaintiff's work shift began at 10:00 p.m. and was scheduled to conclude on May 25, 2000 at 6:30 a.m. On May 24, 2000, plaintiff was given an order to fill that required her to pull pharmacy items from stock. The order was larger than normal and the pharmacy items were the heaviest items that the material handlers normally pulled. This required plaintiff to drive a forklift to pull these items since each pharmacy box weighed between eight and ten pounds each. Plaintiff was then required to go up and down the aisles to get the pharmacy boxes that were located on shelves. Plaintiff had to reach over a railing that was in front of the shelves to prevent the forklifts from running into the shelves. In reaching over the shelf to pull a box, plaintiff had to put one foot in between the railing and the shelf. This put plaintiff in an awkward position by having to twist from right to left and lift the boxes over her head to place the items on her lift pallet. Plaintiff was in this position and while twisting and lifting felt a burning sensation in her upper back. Plaintiff was able to complete her order and then reported the incident to her supervisor, Gerald Williams at approximately 11:30 p.m. on May 24, 2000.
4. Plaintiff was immediately sent by her supervisor to the emergency room at Carolinas Medical Center where she was examined, given medication for pain and inflammation, referred to physical therapy, and told to see an orthopedic doctor if her symptoms continued. Plaintiff then returned to work and finished her shift. While completing her shift plaintiff was not required to engage in her regular work duties; instead, she merely cleaned up her work area. On May 25, 2000, between 4:00am and 5:00am, plaintiff also reported this incident to her shift supervisor, Larry Rushing.
5. Defendant denied plaintiff's workers' compensation claim via Form 61 dated June 8, 2000 thereby denying plaintiff further authorization to continue her medical treatment.
6. In order to continue receiving additional medical treatment, plaintiff visited her personal doctor and was eventually referred to Dr. Robert A. Blake, an orthopedic doctor.
7. Plaintiff was first seen by Dr. Blake on June 20, 2000. plaintiff gave Dr. Blake her May 24, 2000 injury history including that she had felt a sharp pain and burning in her back and shoulder blade. Dr. Blake's initial impression of plaintiff was that she very likely had an injury to the rotator cuff versus a rotator cuff tear. Dr. Blake referred plaintiff for physical therapy and scheduled an MRI of her left shoulder.
8. Plaintiff's next visit with Dr. Blake occurred on June 30, 2000. Plaintiff's MRI report did not show a tear to her rotator cuff. At this visit, Dr. Blake released plaintiff to return to regular duty work without any restrictions on July 14, 2000.
9. On July 17, 2000, plaintiff attempted to return to work with defendant-employer but she was unable to perform her job duties due to great pain in her shoulder girdle area. The shoulder girdle is the area that starts at the base of the neck and extends down to just below the shoulder area.
10. Dr. Blake's final examination of plaintiff on July 20, 2000 yielded concern that plaintiff was developing a pain-type syndrome in her arm. Dr. Blake felt that plaintiff's sprain or strain should have gotten better by this time since her injury had occurred approximately two months previously. Due to plaintiff's pain persisting for this long period of time, Dr. Blake referred her to Dr. Herman Gore, a pain management specialist, to see if he could make any progress with plaintiff's neck pain. Dr. Blake also recommended plaintiff stay out of work until she had been examined by Dr. Gore.
11. On August 7, 2000, plaintiff came under the care of Dr. Gore at the Pain Center. At that time, Dr. Gore diagnosed plaintiff with a left shoulder strain and cervical strain with myofascial pain. At this time, Dr. Gore referred plaintiff to physical therapy and ordered nerve conduction studies on plaintiff which revealed normal results.
12. On August 30, 2000, Dr. Gore returned plaintiff to work without restrictions. Plaintiff attempted to return to work but was unable to complete her job duties because of severe pain in her neck radiating down her arm.
13. On September 19, 2000, Dr. Gore took plaintiff out of work again due to her severe pain and ordered a number of tests including an MRI of her cervical spine. Plaintiff's EMG and cervical spine MRI test results were normal. Plaintiff's test results led Dr. Gore to determine that her pain was due mainly to strain with myofascial or muscular pain. Since plaintiff was having cervical pain, Dr. Gore ordered diagnostic and therapeutic facet joint nerve block injections. Plaintiff experienced thirty to forty percent (30-40%) pain improvement following the injections. Plaintiff's pain decreased to four to five on a pain scale, but she continued to have pain. Since plaintiff's pain had decreased about thirty to forty percent (30-40%) from the nerve block injections, she wanted to try the injections again and more nerve block injections were planned.
14. Dr. Gore's final diagnosis of plaintiff's condition was cervical strain with myofascial pain and muscle spasms and shoulder strain with rotator cuff tendonitis. Dr. Gore recommended future medical treatment for plaintiff concerning her myofascial pain and a functional capacity evaluation to determine her current physical limitations. In Dr. Gore's opinion, plaintiff's pain complaints were consistent with the injury she reported at work on May 24, 2000.
15. Although Dr. Gore found that plaintiff was unable to return to her past work as a material handler with defendant, his medical notes reflect that as of November 30, 2000 plaintiff could perform work with the restriction of no repetitive overhead lifting.
16. On May 24, 2000, plaintiff sustained an injury by accident in the course and scope of her employment involving her left shoulder and a specific traumatic incident of the work assigned resulting in cervical strain.
17. As a direct and proximate result of plaintiff's compensable injury by accident and specific traumatic incident on May 24, 2000, and her resulting pain condition, plaintiff was unable to return to work making the same or greater wages in her former job or any other job between May 25, 2000 and November 30, 2000, the date when Dr. Gore stated plaintiff was capable of returning to work with the restriction of no repetitive overhead lifting.
18. Plantiff has not returned to work or made any efforts to seek employment since Dr. Gore released her to return to work with restrictions on November 30, 2000; however, the greater weight of the competent evidence has failed to prove that it would have been futile for plaintiff to seek employment given her age, work restrictions, educational background, and competitive job market where she resides.
19. The greater weight of the medical evidence fails to show that plaintiff was physically incapable of work in any employment as a consequence of her work-related injury since November 30, 2000 when Dr. Gore released her to return to work with restrictions.
20. plaintiff was terminated from her employment with defendant-employer six months after her injury due to defendant's employment policy which states any injured worker will be terminated after six months of medical leave. During plaintiff's medical leave, she received $1,446.96 from a short-term disability policy that was totally funded by defendant.
21. Plaintiff has reached maximum medical improvement; however, plaintiff has not yet been evaluated for any permanent impairment.
22. Plaintiff is entitled to have defendant provide all past and future medical treatment related to her May 24, 2000 injury by accident involving her left shoulder and specific traumatic incident involving her neck, including all treatment recommended by Dr. Gore necessary to effect a cure or provide relief.
23. Plaintiff has failed to meet her burden of proof to establish ongoing disability after November 30, 2000, the date which Dr. Gore released plaintiff to return to work with the restriction of no repetitive overhead lifting.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On May 24, 2000, plaintiff sustained an injury by accident to her left shoulder and specific traumatic incident of the work assigned resulting in a cervical strain. N.C.G.S. § 97-2(6).
2. As a direct and proximate result of plaintiff's compensable injury by accident and specific traumatic incident on May 24, 2000, plaintiff was unable to return to work making the same or greater wages in her former job or any other job between May 25, 2000 and November 30, 2000 and is entitled to receive total disability compensation during this period. N.C.G.S. § 97-29.
3. As defendant denied plaintiff's workers' compensation claim via a Form 61 Denial of Workers' Compensation Claim filed on June 8, 2000, the burden of proof to establish ongoing disability since November 30, 2000 when Dr. Gore released her to return to work with the restriction of no repetitive overhead lifting then shifted to plaintiff. Plaintiff has failed to prove her inability to earn the same wages she had earned pre-injury with production of medical evidence that she is physically or mentally incapable of work in any employment as a consequence of her work-related injury, evidence that she is capable of some work, but that she has been unsuccessful in obtaining employment after reasonable effort, evidence that she is capable of some work but that it would be futile because of preexisting conditions to seek other employment, or evidence that she has obtained other employment at a wage less than that earned before injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. Plaintiff is entitled to receive medical treatment, including all treatment recommended by Dr. Gore, necessary to effect a cure or give relief related to her May 24, 2000 injury by accident and specific traumatic incident. Plaintiff is also entitled to have defendant provide vocational rehabilitation services to assist in locating suitable employment within her work restrictions given by Dr. Gore. N.C.G.S. § 97-25.
5. Defendant is entitled to a credit for short-term disability compensation which was totally funded by the defendant in the amount of $1,446.96. N.C.G.S. § 97-42.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $246.42 per week from May 25, 2000 through November 30, 2000. This amount has accrued and shall be paid to plaintiff in a lump sum subject to the credit allowed defendant in the amount of $1,446.96 and a reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff which shall be paid directly to plaintiff's counsel in a lump sum.
2. In the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
3. Defendant shall pay all past and future medical expenses of plaintiff, including treatment recommended by Dr. Gore, incurred by plaintiff as a result of her compensable injury by accident and specific traumatic incident so long as it tends to effect a cure or give relief.
4. Defendant shall provide plaintiff with vocational rehabilitation services in order to assist plaintiff in her efforts at locating suitable employment within her work restrictions given by Dr. Gore.
5. Defendant shall pay the costs.
This the ___ day of August 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER